UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RAMIL MANSOUROV | Criminal No. 3:17cr164 (JBA)<br><br>December 22, 2021 |

**RULING GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

Defendant Ramil Mansourov moves for compassionate release under 18 U.S.C. § 3582 (c)(1)(A) on the grounds that the COVID-19 pandemic poses a severe risk of health-related complications when considered in conjunction with his various health conditions. (Def.'s Suppl. Mem. in Supp. of Mot. for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) ("Def.'s Supp. Mem.") [Doc. # 128] at 4-5.) Dr. Mansourov argues his medical conditions constitute extraordinary and compelling reasons warranting his release. The Government opposes, arguing that the combination of the COVID-19 pandemic and Dr. Mansourov's conditions no longer presents an 'extraordinary and compelling reason' because he has been vaccinated." (Gov't's Resp. to Def.'s Mot. for Compassionate Release ("Gov't's Resp.") [Doc. # 154] at 4.) For the reasons that follow, Defendant's motion is GRANTED.

**I.      Background**

On September 17, 2018, Dr. Mansourov pleaded guilty to healthcare fraud in violation of 18 U.S.C. § 1347 and money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i). (Def.'s Suppl. Mem. at 1; Gov't's Resp. at 2.) On March 18, 2019, the Court sentenced Dr. Mansourov to a total effective sentence of eighty-seven months of imprisonment, followed by three years of supervised release, and ordered him to pay restitution in the amount of $4,994,027. (Def.'s Suppl. Mem. at 1; Gov't's Resp. at 3.) To date, Dr. Mansourov has served approximately fifty-two months in prison.

Dr. Mansourov filed a *pro se* Emergency Motion for Sentence Reduction [Doc. # 143] on February 8, 2021 and filed a Supplemental Memorandum in Support of that motion [Doc. # 149] on April 16, 2021 after receiving appointed counsel. Dr. Mansourov is currently held at FCI Fort Dix and is scheduled to be released on October 16, 2022. (Def.'s Suppl. Mem. at 7.) Since the start of the COVID-19 pandemic, 1,599 of FCI Fort Dix's 3,328 incarcerated persons have tested positive, and, although none are currently infected, two incarcerated persons have died as a result. *COVID-19*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus (last accessed Dec. 21, 2021).[1]

Dr. Mansourov is over fifty years old and suffers from several ailments: hypertension, high cholesterol, PTSD anxiety, lower back pain with sciatica, gastroesophageal reflux disease, obstructive sleep apnea, and a BMI close to 30. (Def.'s Suppl. Mem. at 4-5.) Dr. Mansourov submits records documenting his medical history. (Ex. A, Medical Records [Doc. # 149-1].) Notably, Dr. Mansourov tested positive for COVID-19 but has since recovered and received a two-dose vaccination. (*Id.* at 6.)

The COVID-19 virus can be fatal and it spreads rapidly. *See How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fprepare%2Ftransmission.html (last accessed Dec. 20, 2021). That much has been known for some time. However, the discovery of COVID-19 mutations, such as the most recent Omicron Variant, has perpetuated uncertainty about the efficacy of available vaccines and other responsive measures. *See Omicron Variant: What You Need to Know*, CTRS. FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html (last accessed Dec. 21, 2021). The Centers for Disease Control and Prevention ("CDC") advises that people

---

[1] Curiously, the number of deaths reported at FCI Fort Dix has decreased from three to two since the Court last took notice of the statistics reported by the BOP on November 2, 2021.

with certain conditions, including cancer, chronic kidney disease, chronic lung diseases, dementia or other neurological conditions, diabetes, down syndrome, heart conditions, HIV infection, immunocompromised state, liver disease, being overweight and obesity, pregnancy, sickle cell disease or thalamessia, solid organ or blood stem cell transplant, stroke or cerebrovascular disease, or substance use disorder "can be more likely to get severely ill from COVID-19." *People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Dec. 20, 2021).

Dr. Mansourov represents that he has exhausted his administrative remedies. (*Id.* at 2.) The Government does not dispute that representation.

## II. Discussion

### A. Legal Standard

Under Title 18 of the United States Code § 3582(c)(1)(A):

> the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Although incarcerated persons previously could only seek compassionate release from the BOP, the First Step Act of 2018 permits federal prisoners to seek relief from the federal courts upon exhaustion of administrative rights. *See* 18 U.S.C. § 3582(c)(1)(A). In "shift[ing] discretion from the [BOP] to the courts," the First Step Act paved the way for "the release of thousands of imprisoned people who[] did not need to be incarcerated" by "giving discretion to an appropriate decisionmaker," instead of "mandating more lenient outcomes." *United*

3

*States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020). By empowering district courts to reduce sentences and release incarcerated people, Congress intended to expand, expedite, and improve the process of compassionate release. *Id.* at 235. While a district court's discretion to grant compassionate release motions is extensive, a court cannot find extraordinary and compelling circumstances based on "rehabilitation *alone.*" *Brooker*, 976 F.3d at 237-38.

### B. Extraordinary and Compelling Circumstances

Dr. Mansourov argues that the combination of his various conditions and the threat posed by COVID-19 constitute extraordinary and compelling circumstances. Of particular concern to Dr. Mansourov is his obstructive sleep apnea for which he alleges he has not received proper treatment. (Def.'s Suppl. Mem. at 5.) The Government contends that he "has provided effective 'self-care' against the virus because he has received the COVID-19 vaccine, and he does not present any extraordinary and compelling reason allowing compassionate release." (Gov't's Resp. at 5.)

Although, "there can be no bright-line rule that a vaccinated individual is no longer at compellingly elevated risk, . . . in most instances, the risk of complications is dramatically reduced." *United States v. Harris*, No.: SAG-05-61, 2021 WL 1516012, at *2 (D. Md. Apr. 16, 2021); *see also United States v. Kosic*, No. 18 Cr. 30(PAC), 2021 WL 1026498, at *2 (S.D.N.Y. Mar. 17, 2021) (rejecting motion for compassionate release based on conditions at FCI Fort Dix, where the incarcerated person received the first dose of the Moderna vaccine, and also recovered from COVID-19). However, while the odds of experiencing severe illness are substantially reduced by the vaccines, "they are not non-existent, particularly given the impossibility of consistent social distancing while incarcerated in a congregate setting." *United States v. Suggs*, No. 3:99cr244 (JBA), 2021 WL 2661874, *5 (D. Conn. June 28, 2021); *see also* Ezgi Hacisuleyman, et. al*, Vaccine Breakthrough Infection with SARS-CoV-2 Variants,* NEW ENGL. J. MED. (2021), https://www.nejm.org/doi/full/10.1056/NEJMoa2105000

4

(explaining that "immunizations are proving to be less potent against" the Delta variant and emphasizing "the need to maintain layers of mitigation strategies").

The Court cannot agree that Dr. Mansourov's vaccination status, considered without context, weighs against a reduced sentence. Only two-thirds of incarcerated persons at FCI Fort Dix are vaccinated. *COVID-19 Vaccine Implementation*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last accessed Dec. 21, 2021); *FCI Fort Dix*, FED. BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/ftd/ (last accessed Dec. 21, 2021) (reporting that 2,197 of 3,328 incarcerated persons have been vaccinated). And four members of staff are reported to be presently sick with COVID-19, while two members of the incarcerated population have passed away from the virus. *Id.* Meanwhile, since the pandemic's beginning, 1,599 people incarcerated at FCI Fort Dix had contracted it at one point—a startling forty-eight percent of its reported population. *Id.* Finally, the BOP reports that FCI Fort Dix is currently operating at a "level three" COVID-19 operational status, the highest such status indicating existence at the facility one of either: (1) a medical isolation rate at or above seven percent, (2) a facility vaccination rate below fifty percent, or (3) a community transmission rate at or above 100 per 100,000 individuals in the last seven days.[2]

Intimately aware of these circumstances, Dr. Mansourov contends that he remains "at risk of serious infection if he contracts a variant or is reinfected" by COVID-19. (Def.'s Suppl. Mem. at 6.) The Court agrees. An incarcerated person's vaccination status does not serve as a total bar to the relief Dr. Mansourov seeks. *See United States v. Flores*, 97 Cr. 817 (DC), 2021 WL 3682054, at *2 (S.D.N.Y. Aug. 19, 2021) (granting compassionate release motion and noting that "COVID-19 still presents a substantial risk, particularly in light of the uncertainties presented by the Delta variant and breakthrough infections"); *United States v.*

---

[2] For more information, *see BOP COVID-19 Operational Levels*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last accessed Dec. 21, 2021.

*Reyes*, No. 3:11cr1 (JBA), 2021 WL 2154714, *3 (D. Conn. May 26, 2021) ("Although Mr. Reyes has received both doses of the vaccine that provides very substantial protection against COVID-19, newly available data describe "breakthrough infections" caused by COVID variants in vaccinated populations."). Moreover, the increased risks of severe COVID-19 infection associated with Dr. Mansourov's obstructive sleep apnea if untreated, his obesity, and his hypertension are weighty considerations.

In view of the conditions at FCI Fort Dix, it appears that institution is not managing the spread of COVID-19 adequately and the risk to Dr. Mansourov has not been mitigated.[3] Those considerations in conjunction with Mr. Mansourov's medical conditions lead the Court to conclude that Dr. Mansourov has presented extraordinary and compelling circumstances.[4]

### C. Section 3553(a) Factors

Although Dr. Mansourov has presented extraordinary and compelling circumstances, the Court must also consider the § 3553 factors concerning the relief of release which he seeks. Dr. Mansourov argues that, at over fifty years of age, he is not a danger to the public and that the rehabilitative goals of his sentence would be better served by supervised release. (Def.'s Suppl. Mem. at 12.) Dr. Mansourov urges the Court to release him because he is not receiving drug treatment counseling and related services due to the BOP's response to

---

[3] Significantly, when considering COVID-19 prevention measures in correction facilities, the CDC has stated that "not enough information is available to determine a specific level of vaccination coverage needed to modify facility-level prevention measures," but emphasized that "high COVID-19 vaccination coverage is critical to protect . . . people who are incarcerated/detained." *Guidance for Correctional & Detention Facilities*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last accessed Dec. 21, 2021).

[4] The Government concedes that "[i]t is possible that the scientific consensus may shift dramatically if vaccine-resistant variants emerge." (Gov't's Resp. at 10.) While there has been no "dramatic shift" in our understanding of the value of vaccination in warding off serious infection, variants (most notoriously, the Omicron Variant) may spread more easily than the original strain. *See What We Know about Omicron*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html.

the COVID-19 pandemic. (*Id.* at 13.) For example, he was admitted to the residential drug abuse program ("RDAP"), but that RDAP has not run consistently at FCI Fort Dix. (*Id.*) The Government does not advance an argument in response to Dr. Mansourov's § 3553(a) contentions.

Under § 3553(a), the Court seeks to impose a sentence that is "sufficient, but not greater than necessary" to

> reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct . . . to protect the public from further crimes of the defendant; and . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

*Id.* The Court must also determine if Defendant is a "danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13; *see* 18 U.S.C. § 3582(c)(1)(A).

While Dr. Mansourov's crimes were undoubtedly very serious, the Court concludes that they do not outweigh Dr. Mansourov's extraordinary and compelling circumstances. Dr. Mansourov's crimes reflected a criminal intent to steal millions of dollars of the public's money intended for needy people. Yet the public is not at a continued risk of his fraudulent conduct, given that Dr. Mansourov can no longer practice medicine. Additionally, he has served over half of his sentence without any disciplinary infractions in his record. Finally, without access to rehabilitation services, such as RDAP, it appears that his incarceration is no longer serving one of its intended purposes. The Government does make any arguments attempting to persuade the Court otherwise. Thus, upon consideration of the factors under § 3553(a), they do not militate against Dr. Mansourov's motion for a sentence reduction. The Court will reduce Dr. Mansourov's sentence to time served. His first six months on supervised release will be on home detention with location monitoring. The remaining conditions of supervised release are unchanged.

7

## III. Conclusion

For the foregoing reasons, Defendant's Motion for Sentence Reduction under First Step Act [Doc. # 143] is GRANTED.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 22nd day of December 2021.